BOLTON LAW, PLLC
111 N. 7th St, #3386
Coeur d'Alene, Idaho 83816
Telephone: (208) 306-3360
Facsimile:  (208) 519-3974
K. Jill Bolton ISBN: 5269
reception@kjboltonlaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL LEE MOORE & KAREN MOORE, husband and wife,<br><br>    Plaintiffs, | CASE NO.: 2:22-CV-376-BLW<br><br>RESPONSE TO THE CITY OF BONNERS FERRY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v.<br><br>THE CITY OF BONNERS FERRY, BRIAN ZIMMERMAN; MARTIN RYAN, MICHAEL VAN LEUVEN, GARY TOLLESON, and JOHN and JANE DOE I-X, as agents of BONNERS FERRY POLICE DEPARTMENT<br><br>    Defendants. | |

## I.  <u>INTRODUCTION</u>

Plaintiffs stand by the facts pled in their Complaint. These facts contradict

Defendants claimed "material facts not in dispute" in several respects. As set forth

in the Declaration of Counsel, Declaration of Daniel Moore and Exhibits attached thereto, there are many material facts in dispute and the case should proceed.

The Plaintiffs agree that this Court's July 17, 2023, Memorandum Decision and Order (Dkt. 43) dismissed Plaintiff's Counts I and II. Plaintiffs filed their Amended Complaint in conformance with said order. (Dkt. 44)("Amended Complaint"). Plaintiffs take exception to this Court's decision dismissing Counts I and II and maintain that they have valid § 1983 claims based upon law enforcement's conduct in this case. Plaintiffs agree, however, that this Court's dismissal, should it stand, undermines their ability to proceed on Counts III and IV.

Given the Bonners Ferry Defendants assertions in their Motion for Summary Judgment, this Court has been invited to review the facts pertaining to the underlying criminal case, including the interrogation of Dr. Moore. Plaintiffs urge that in doing so, this Court must reconsider the unequal application of collateral estoppel to Count II versus Count I. Collateral estoppel should either be applied to both Counts or to none. In doing so, at least one of these Counts must proceed.

Further, the Plaintiffs maintain that they have made a valid claim in Count V based on the Defendants' negligent infliction of emotional distress.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).  If "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is the appropriate remedy. *Lockett v. Catalina Channel Exp., Inc.,* 496 F.3d 1061, 1064 (9th Cir. 2007), citing *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.* (9th Cir. 2003).

A district court must review the evidence in support of a motion for summary judgment "in the light most favorable to the nonmoving party" and must apply said facts to the relevant substantive law at issue. *Id.* at 1064.

### III.   <u>FACTUAL BACKGROUND</u>

The facts surrounding the unlawful custodial interrogation of Dr. Daniel Moore ("Dr. Moore") are set forth in comprehensive detail in the Amended Complaint at paragraphs 1 through 184. These facts are substantiated through several exhibits filed herewith as follows. The actual details of the interrogation of Dr. Moore are video-taped and were made part of the record in the underlying criminal case. (**Declaration of Counsel, Ex. 1**) The underlying criminal action was initiated by the filing of a criminal complaint by the City of Bonners Ferry Defendant Martin Ryan. (**Declaration of Counsel, Ex. 2**). Defendants not only used the unlawfully obtained statements of Dr. Moore at preliminary hearing, but they relied solely on that evidence in their effort to establish probable cause to bind Dr. Moore over to answer the charges before the state district court. *State v. Moore,* 516 P.3d 1054, 1069-70 (2022). As such, the district court properly dismissed charges pursuant to I.C. § 19-815A because there was insufficient evidence and no probable cause to support the charges against Dr. Moore. "Having put forth a[n]

[inadmissible] confession, the State failed to produce sufficient evidence at the preliminary hearing to support a finding of probable cause." Id. 516 P.3d at 1070.

The Idaho Attorney General conceded not only that "the district court's finding of a *Miranda* violation was correct" but also that this "police conduct" was "condemnable for the *Miranda* violation." (**Declaration of Counsel Ex. 3, pp. 6, 10**).

The conceded issues relating to the *Miranda* violations include the following specific findings from state district Judge Buchanan's Memorandum Decision and Order Granting Moore's motion to suppress. (**Declaration of Counsel, Ex. 4**). The district court found:

> The August 27, 2020, police interview of Moore started at 2:49 p.m. Approximately 15 minutes into the interview, Van Leuven tells Moore that, "if you don't explain to us your intent, then we infer your intent, based on what we see, which is first degree murder." Moore responds by saying: "Well, I didn't shoot him. And I'm sorry, but that's ‑that's what it is. So, I guess if you are going to do that, <u>then I need to get an attorney."</u> This invocation occurred 15 minutes and 19 seconds into the interview. … [such invocation was] clear and unequivocal. Van Leuven told him to "sit tight"; he terminated the interview, and the two detectives left the room. Moore was left seated alone in the interview room for 45 minutes. Then, Van Leuven, instead of cutting of questioning, sends in Assistant Police Chief Ryan ‑ who knows Moore from their many years in the Bonners Ferry community ‑ to continue the interrogation of Moore. Moore had not asked to talk to Ryan. Ryan entered the room and continued the interrogation of Moore without ever mentioning Moore's request for an attorney. Based upon these facts, this Court finds that because police failed to cease questioning Moore when he unequivocally invoked his right to counsel at 15 minutes and 19 seconds into the interview, all statements made by Moore to Ryan after that invocation must be suppressed.

(Declaration of Counsel, Ex. 4 at pp. 405-406).

The State of Idaho appealed the district court's later decision to dismiss the

charges for lack of probable cause and the district court's decision that the continued interrogation of Dr. Moore after he invoked his right to counsel violated due process. (Declaration of Counsel, Ex. 3 ). However, it conceded the district court's findings concerning Van Leuven, Tolleson and Ryan's violations of Dr. Moore's *Miranda* and the Fifth Amendment rights. Id. Indeed, the Idaho Attorney General who spoke for the Defendants in the appeal of the district court's decision not only conceded these violations, they described law enforcement conduct in proceeding with the interrogation of Dr. Moore after he asserted his right to counsel as "condemnable." Id. at 10 . The Idaho Supreme Court recognized that the so-called confession law enforcement obtained from Dr. Moore was one "**which the State now acknowledges was a violation of Moore's Fifth Amendment rights**." *Moore*, 516 P.3d at 1071.

This violation occurred through the officers ignoring Dr. Moore's repeated requests for counsel during his custodial interrogation <u>and</u> using said unlawfully obtained statements in criminal proceedings. These proceedings included Defendant Ryan filing a criminal complaint (Declaration of Counsel, Ex. 2), and using the statements in a preliminary hearing, all of which the Idaho Supreme Court recognized as violating "Moore's Fifth Amendment Rights." Id.

As alleged in Count III, the City of Bonners Ferry is liable for the acts of a final policymaker, Defendant Martin Ryan. As alleged in Count IV, the City of Bonners Ferry is liable for official policy practice or custom. Further, it has become apparent as this litigation has proceeded that the City of Bonners Ferry did not

properly train Ryan or Zimmerman as these officers' training records do not demonstrate any training on the *Edwards* rule. Additionally, in their Answer to the Amended Complaint and explained below, the Defendants profess to not understanding that rule. The City's own policing policy fails to identify the responsibility under the law that their officers must cease questioning a suspect once that suspect asserts his right to counsel. The only section of their Idaho Policing Policy with any reference to Miranda only outlines when Miranda warnings should be given and when they need not be given. Nothing is said about what Bonners Ferry police must do when a suspect in custody invokes his *Miranda* rights.(Bates 2.0030) (Dkt 47-3, p. 42).Further, neither Assistant Chief of Police Ryan, nor Chief Zimmerman have supplied any record of having received training on their legal duty to stop questioning a suspect once that suspect asserts his right to counsel during a custodial interrogation. (Dkt. 47-4, pp7-12).

Due to Defendant's unlawful and negligent actions and failure to exercise ordinary care in the exercise of their duties, the Moores suffered emotional distress as described in the amended complaint and as set forth in the Declarations of sdescribed in the Declarations of Dr. Daniel Moore and Karen Moore filed herewith.

## IV. <u>ARGUMENT</u>

### A. Plaintiffs agree that Counts I & II were dismissed by this Court but maintain that violations of Dr. Moore's Fifth Amendment Right to Counsel and Due Process Rights occurred in this case.

In this Court's Memorandum Decision and Order, Counts I and II of the Plaintiffs' Amended Complaint were dismissed. (Dkt 43). Over the Plaintiffs'

objection, this Court found that Count I did not establish a Fifth Amendment violation based on the reasoning of the Supreme Court in the *Vega v. Tekoh,* 142 S. Ct. 2095 (2022) case. That case established that failure to read *Miranda* warnings to a suspect does not, standing alone, constitute a violation of a right secured by the Constitution and laws of the United States for the purposes of a § 1983 claim. Id. However, the Plaintiffs maintain that their claim was not limited by *Vega* as this case established only that "a violation of *Miranda* does not necessarily constitute a violation of the Constitution" and where exceptional or "unusual circumstances" exist, exclusion of the unwarned statements in the underlying criminal trial may not be "a complete and sufficient remedy." Id. 2107-2108, quoting *Chavez v. Martinez*, 538 U.S. 760, 790 (2003)(Kennedy J. concurring in part and dissenting in part). Indeed, is a case such as this where the violations of *Miranda* by Defendants are conceded as "condemnable" and where the highest Court of the State in which said condemnable *Miranda* violations are found to be Fifth Amendment violations, this Court should find that such "unusual circumstances" exist and permit Plaintiffs to proceed with their § 1983 claim on this violation of law and the Constitution.

Since this Court applied the legal principle to the due process coercion question answered by the Idaho Supreme Court, so too should it apply collateral estoppel principles to the Fifth Amendment violation finding by the Idaho Supreme Court. Alternatively, this Court should reconsider and alter its earlier order to apply federal law to the Idaho Supreme Court's ruling on the due process coercion question set forth in Count II of the Amended Complaint.

**B.** **If collateral estoppel is applied to Moore's due process claim, then so too should this legal principle apply to his Fifth Amendment claim. Alternatively, this Court should examine both claims under existing federal law and find the ruling of the Idaho Supreme Court regarding due process/coercion constitutionally infirm under existing federal law.**

Plaintiffs agree that Counts III & IV of the Amended Complaint are contingent on underlying violations of the law or Constitution. Those Constitutionally based claims were made in Counts I (Fifth Amendment) & II (Due Process), both of which have been dismissed by this Court.

In dismissing Count II, this Court found that the Defendants would prevail on their motion to dismiss because the Idaho Supreme Court found in *State v. Moore*, 516 P.3d 1054 (2022) that statements made by Dr. Moore were "voluntary and uncoerced" and collateral estoppel barred his due process claim. (Dkt. 43, p. 21). Count II alleged a § 1983 claim grounded in due process violations stemming from law enforcement's coercion of Dr. Moore's false confession. Dr. Moore founded Count II on established federal law concerning violations of due process resulting from coerced confessions. See e.g., *Cooper v. Dupnick*, 963 F.2d 1220, 1243 (9th Cir. 1992 (overruled on other grounds by *Chavez v. Martinez,* 538 U.S. 760 (2003)(repeated denial of request for counsel during custodial interrogation was a "tactic was designed to generate a feeling of helplessness" which made the suspect a "prisoner in a totalitarian nightmare, where the police no longer obeyed the Constitution, but instead followed their own judgment, treating suspects according to their whims."); *Tobias v. Arteaga*, 996 F.3d 571, 581(9th Cir. 2021)(quoting *United States v. Harrison*, 34 F.3d 886, 891-92 (9th Cir. 1994))([a]ny suggestion by

a law enforcement officer 'that a suspect's exercise of the right to remain silent may result in harsher treatment by a court or prosecutor' is unconstitutionally coercive." ); *Collazo v. Estelle* 940 F.2d 411 (9th Cir. 1991)( when defendants request for counsel during custodial interrogation was met with law enforcement response that an attorney would make it worse for defendant, waiver of Miranda was product of coercion and involuntary). Dr. Moore asked for counsel multiple times. Law enforcement ignored his repeated requests. Law enforcement threatened that failure to cooperate and provide a statement without counsel present would result in the harsher charge of first-degree murder carrying the death penalty. The Idaho Supreme Court failed to apply this federal authority to their analysis of this case.

Indeed, the Ninth Circuit's decision in *Collazo v. Estelle* 940 F.2d 411 (9th Cir. 1991) is nearly analogous in many respects to the interrogation at issue in this case. Using the authority of *Collazo*, the state district court found that "Moore's will was overborne by the badgering and overreaching by police such that his waiver of his *Miranda* right to counsel was not made knowingly, voluntarily, and intelligently...but rather, was the product of police coercion." (Declaration of Counsel, Ex. 4 at p. 411). Though the state district court relied on the *Collazo* decision, the Idaho Supreme Court ignored it outright. Idaho was not bound by the Ninth Circuit's wisdom regarding due process coercion analysis. But there can be no question that when federal authority such as *Collazo* and other Ninth Circuit coercion cases are applied to the facts of this case, the decision of the state district court would be upheld. This Court should apply binding Ninth Circuit precedent to

its analysis of Count II, just as it applied the precedent of the *Vega* case to its analysis of Count I.

Alternatively, this court should apply collateral estoppel to both Counts. Just as the Supreme Court of Idaho made a finding regarding the due process coercion claim in Dr. Moore's § 1983 claim, so too did the Idaho Supreme Court find that Dr. Moore suffered a Fifth Amendment violation by law enforcement's continued interrogation of him after he asserted his right to counsel. *Moore*, 516 P.3d at 1071. Indeed the Idaho Supreme Court described it as "a confession which the State now acknowledges was a violation of Moore's Fifth Amendment rights." Id.

In recognizing this obvious disparity in application of the law of collateral estoppel in favor of the Defendants as to Count II, but not applying it as to Count I, the Plaintiffs request one of two remedies. Either issue preclusion applies to both Counts I and II such that the Plaintiff should have the ability to litigate his § 1983 claim in Count I, or this Court should equally apply the principle that no preclusive effect be given to constitutionally infirm judgments. *Kremer v. Chemical Constr. Corp*, 456 U.S. 461 (1982). This Court decided not to follow the Idaho Supreme Court's finding of a Fifth Amendment violation pursuant to the US Supreme Court's decision in *Vega v. Tekoh*, 142 S.Ct. 2095 (2022), which predated the Idaho Supreme Court's decision in *Moore*. If application of federal law to what the Idaho Supreme Court decided is appropriate in Count I, then so too should federal law concerning the voluntariness of Dr. Moore's confession be examined under federal law in Count II. "The very purpose of § 1983 was to interpose the federal courts

between the States and the people, as guardians of the people's federal rights – to protect people from unconstitutional action under color of state law, whether that action be executive, legislative or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)(internal citations omitted).

Finally, this Court could simply decide that in fact, given the egregious and "unusual circumstances," this case presents the type of case that the Supreme Court in *Vega* identified as appropriate for application of a *Miranda* based Fifth Amendment § 1983 claim. *Vega* 124 S.Ct. at 2107.

By challenging the propriety of Ryan's conduct in continuing with the interrogation of Dr. Moore after he asserted his right to counsel, the Bonners Ferry Defendants have invited this Court's examination of the video-taped interrogation of Dr. Moore on August 27, 2020, and the decision of the state district court suppressing the confession. Plaintiffs request that this Court do so with an eye toward the constitutional infirmity in the Idaho Supreme Court's finding. An examination of this unlawful interrogation makes plain that law enforcement in this case violated *Moore's* due process rights and produced an involuntary statement under the standards applicable in the Ninth Circuit. Such a review demonstrates law enforcement's repeated denials of Dr. Moore's clear and unequivocal requests for counsel, use of psychologically coercive tactics and threats of first-degree murder charges if Moore didn't speak with them without counsel, while promising leniency if he did. A review of the taped interrogation of Dr. Moore will make plain to this Court that the decision of the Idaho Supreme Court

regarding whether Dr. Moore's statements were involuntary and coerced in violation of due process was Constitutionally infirm.

In this Motion for Summary Judgment, the City of Bonner's Ferry now try to relitigate the *Miranda* violation and Fifth Amendment claims set forth in the Amended Complaint and make preposterous claims that Dr. Moore's request for counsel during the custodial interrogation were ambiguous. (Dkt. 47-4). They urge issue preclusion be applied to the decision of the Idaho court concerning the due process violation question but hope this Court will ignore the findings of the state courts on the issue of the *Miranda* and Fifth Amendment violations. Thus, they hope to take advantage of those rulings in the state courts that favor their position but hope that this Court ignores those rulings in the state courts that were unfavorable to their position. This Court should deny this request.

## C. Upon finding that Plaintiffs may proceed under Count I or II, Defendants will be liable for acts of a final policymaker and official policy, practice or custom as set forth in Counts III and IV should proceed

The Supreme Court and the Ninth Circuit have recognized three theories of local government liability under § 1983:First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in

the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1089 (9th Cir. 2013).

The City of Bonners Ferry has not supplied any undisputed material facts establishing that none of these theories are possible in this case. Defendant Zimmerman declares that his Department had no written policy to ignore custodial interrogee's requests for counsel during an interrogation. (Dkt. 47- 3). However, the absence of a writing, does not foreclose the claim brought by the Plaintiffs here that this was in fact a policy pursued by a person with policy making authority, Ryan. In response to requests for productions of the job responsibilities of the Chief of Police and the Assistant Chief of Police, the Defendants provided no evidence to suggest that Defendant Ryan had anything other than final policy making authority. (Declaration of Counsel, Ex. 5). While Bonners Ferry produced the job description for their Chief and for Patrolman, they notably supplied a blank description for the Assistant Chief. (Declaration of Counsel, Ex. 5, Bates 2.0005). This suggests the Assistant Chief had free reign to establish and promote policy, regardless of the lawfulness of such policies. Further, from the Patrolman job description, the Assistant Chief is a superior officer to Patrolman and charged with giving direction

to Patrolman.

The Plaintiffs maintain in this case that Assistant Chief of Police Ryan was an official with final policy making authority on issues, such as those involved in the decision to ignore a suspect's unequivocal request for counsel during a custodial interrogation. Because the motions filed in this case are made before the closing of discovery, neither the City's Chief of Police Zimmerman, nor its Assistant Chief Ryan have been deposed in this matter to explore the facts set forth in Plaintiffs claims which they contest here. Their policies surrounding the interrogation of suspects, their trainings concerning such topics as *Miranda* rights afforded suspects, and their understanding and implementation of policy to follow the law articulated by the United States Supreme Court in *Edwards v. Arizona* and its progeny therefore remain unknown and contested by Plaintiffs' claims.

The training records supplied in the declarations of Ryan and Zimmerman also do not establish uncontested facts to support their motion. There is no reference in any of the Declarations supplied or in the produced training records that either Zimmerman or Ryan have received any specific training regarding the rights afforded custodial interrogees. (Dkt. 47-3, 47-4). Shockingly notable, in their answer to the Amended Complaint (Dkt. 45) which articulates the *Edwards* rule at paragraph 173, the City of Bonners Ferry state that "Defendants deny that the paragraph accurately or completely characterizes the referenced rule." (Dkt. 45, p. 20, ¶ 173). This paragraph articulates the *Edwards* rule: "[t]he law was well-established at the time of the custodial interrogation of Dr. Moore that when a

suspect in custody has requested counsel, all questioning must stop until counsel is

provided. *Edwards v. Arizona,* 451 U.S. 477, 482 (1981)".  Indeed, it was this specific

provision of the *Edwards* rule that required Ryan not proceed with the interrogation

of Dr. Moore after he first invoked his right to counsel to the ISP Defendants.

Further, even today, after the point had long since been established and conceded

by the State of Idaho, Ryan continues to maintain and contest that Dr. Moore's

request for counsel was something other than clear and unequivocal. (See,

Declaration of Ryan at p. 3, ¶ 13, "After Moore mentioned an attorney, the ISP

officers left the interview room…because Moore's statement was qualified and

somewhat ambiguous, we determined the questioning should continue."). This

statement in Ryan's declaration all but establishes his lack of training and

understanding of this fundamental rule of law relating to a custodial interrogee's

rights in a custodial interrogation. If the Assistant Chief of Police of Bonners Ferry

does not have a firm grasp on this straightforward principle of law, it is because his

office has a practice or custom of ignoring custodial interrogees rights, or because

the City of Bonners Ferry does not adequately train their officers.  In other words,

the City of Bonners Ferry concedes in their answer that they dispute the ruling of

*Edwards*  and establish through Ryan's Declaration that either they have failed to

adequately train their officers to understand this well-established legal precedent

that is critical to their work as law enforcement officers, or their policy and practice

is to ignore the ruling of *Edwards*  as was demonstrated by Ryan on August 27,

2020 when he continued to interrogate Dr. Moore notwithstanding not only his first

clear and unequivocal request for counsel, but his repeated clear and unequivocal requests for counsel. Ryan and the ISP Defendants' error was so obvious and plain that even the State of Idaho Attorney General called their violations of Dr. Moore's *Miranda* rights "condemnable." (Declaration of Counsel, Ex. 3, p. 10).

### D. Plaintiffs Negligent Infliction of Emotional Distress Claims should proceed

Historically, a claim for negligent infliction of emotional distress (NIED) in Idaho had five elements: (1) the existence of a duty, (2) a breach of that duty, (3) proximate cause, (4) damages, and (5) physical manifestation of the injury. *Sommer v. Elmore Cty.*, 903 F.Supp.2d 1067, 1075 (D. Idaho 2012). More recently, the Idaho Supreme Court identified the elements in an Idaho NIED claim as: "(1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint School Distr. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013). Further, "there must be some proof of a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 161 Idaho 326, 332, 775 P.2d 640, 646 (1989).

Defendants Zimmerman and Ryan both had a legal duty toward Moore. As recognized by the Idaho Supreme Court "every person 'has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others.'" *Frogley,* 155 Idaho at 569, 314 P.3d at 624 (2013), quoting *Nation v. State Dep't of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007).

As set forth in the Amended Complaint, Defendants violated this duty when they encouraged and directed the continued interrogation of Dr. Moore after he asserted his right to counsel and then initiated criminal proceedings by filing a criminal complaint charging Dr. Moore with second degree murder based on the unlawfully obtained statements. (Dkt. 44, ¶ 154). Defendants then proceeded in using said unlawfully obtained statements against Dr. Moore during the public preliminary hearing. (Dkt. 44, ¶ 157). By using these unlawfully extracted statements "in a criminal proceeding", the ISP Defendants violated Dr. Moore's Fifth Amendment rights. See *Chavez v. Martinez*, 538 U.S. 760, 761 123 S.Ct. 1994, 1997-1998 (use of a compelled statements against an accused, obtained by violations of *Miranda* rights occurs when such statements are used "in a criminal proceeding"). See also, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990).

Consequently, Plaintiffs herein, Dr. and Mrs. Moore suffered negligent infliction of emotional distress. (Declarations of Daniel Lee Moore and Karen Moore). As set forth in the factual allegations in their Amended Complaint, they suffered the likely and foreseeable damages of Dr. Moore being charged with a murder he did not commit and the couple's small north Idaho community of Bonners Ferry learning of him having confessed to the crime. Though the confession was suppressed and could not be used against him in a criminal proceeding, the damage to the couple and their reputation continued and ended their lives as they knew it in the hometown where they had lived for decades, raised their children, worked in the community, and built their

business.

Finally, Defendants' claim that Idaho Code§ 6-904(3) precludes their NIED claim lacks merit. Though such a claim for malicious prosecution might have been brought, Plaintiffs have not made a claim under this exception to government liability. They have alleged neither "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, receipt or interference with contract rights." I.C. § 6-904(3). Instead, Plaintiffs have based their tort claim on Defendants failure to exercise ordinary care in the performance of their discretionary functions. See *Rees v. State Dept. of Health and Welfare*, 143 Idaho 10, 137 P.2d 397 (2006)(the ITCA permits claims against a government employee arising out of acts or omissions requiring the exercise of ordinary care in the performance of discretionary functions), I.C. § 6-904(1).

The purpose of the Idaho Tort Claims Act (ITCA) is to provide "much needed relief to those suffering injury from the negligence of government employees." Id., 143 Idaho at 19, 137 P.2d at 406 (quotations omitted). "The ITCA is to be construed liberally, consistent with its purpose, and with a view to attaining substantial justice...Therefore...liability is the rule and immunity is the exception." Id. (quotations omitted). Further, "whether a government exercised ordinary care normally a factual question best left to the jury." Id. 143 Idaho at 20, 137 P.2d at 407.

Here, the contested material facts establish that the Defendants

negligently proceeded with their interrogation of Dr. Moore, failing to abide by well-established legal precedent prohibiting them from doing so after he clearly and unequivocally exercised his right to counsel. The Defendants then persisted in filing criminal charges and presenting their unlawfully obtained statements in a public preliminary hearing. They did so knowing that Dr. Moore had a credible, reliable and trustworthy alibi. They did so, notwithstanding that an eyewitness to a suspect seen fleeing the scene of the murder, within moments of hearing the gun shot that killed Drake, identified the suspect as a black man and having a tanner skin color that the photo array of white men shown the suspect. The eyewitness failed to positively identify Moore from a photo array. All of this information was known to law enforcement, prior to the coercive interrogation they conducted of Dr. Moore on August 27, 2020 and prior to their initiation of criminal proceedings against Dr. Moore.

## V.  <u>CONCLUSION</u>

The Bonners Ferry Defendants' motion for summary judgment should be denied. Plaintiffs agree that Counts I & II were dismissed by this Court but maintain that violations of Dr. Moore's Fifth Amendment Right to Counsel and Due Process Rights occurred in this case.

If collateral estoppel is applied to Moore's due process claim, then so too should this legal principle apply to his Fifth Amendment claim. Alternatively, this Court should examine both claims under existing federal law and find the ruling of

the Idaho Supreme Court regarding due process/coercion constitutionally infirm under existing federal law.

Upon finding that Plaintiffs may proceed under Count I or II, Defendants will be liable for acts of a final policymaker and official policy, practice or custom as set forth in Counts III and IV and these claims should proceed.

Plaintiffs have properly alleged all elements of the State of Idaho tort claim of negligent infliction of emotional distress. Should this Court decide that specific allegations of physical injury are required, leave should be granted to the Plaintiffs to amend their complaint to include this minimal additional language. Defendants had a legal duty to exercise ordinary care to prevent unreasonable, foreseeable risk of harm to others. It was foreseeable that extracting a false confession, made possible solely through the officers' failure to exercise ordinary care before initiating criminal proceedings of this magnitude against Dr. Moore would inflict emotional distress as described by the Moores.

Finally, the factors of 28 U.S.C. § 1367(c) favor the Court exercising its discretion to retain jurisdiction of the State law claims set forth in Count V, even if no federal claims continue.

Dated this 12th day of October 2023.

*/s/ K. Jill Bolton*
K. Jill Bolton
Attorney for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I certify that on October 12, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will notify Defendants'

Attorneys:

Bentley G. Stromberg
[bstromberg@clbrmc.com](mailto:bstromberg@clbrmc.com) , [bmckinley@clbrmc.com](mailto:bmckinley@clbrmc.com)
Michael J. Kane
[mkane@ktlaw.net](mailto:mkane@ktlaw.net) , [tpresler@ktlaw.net](mailto:tpresler@ktlaw.net)


*/s/ K. Jill Bolton*
K. Jill Bolton